[Cite as *State v. Rogers*, 2024-Ohio-1637.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-08-063 |
| | : | O P I N I O N |
| - vs - | | 4/29/2024 |
| | : | |
| TODD JEFFREY ROGERS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 22CR39713

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Flannery | Georgalis, LLC, and Nathan R. Coyne and Matthew L. Jalandoni, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, Todd Jeffrey Rogers, appeals his conviction in the Warren County Court of Common Pleas for one count of first-degree felony rape and five counts of third-degree felony gross sexual imposition of a child and close family member who, at all times relevant, was under the age of ten years. For the reasons outlined below, we affirm Rogers' conviction.

**Facts and Procedural History**

{¶ 2}   On September 9, 2022, the Warren County Grand Jury returned an 11-count indictment against Rogers.  The indictment charged Rogers with two counts of first-degree felony rape, two counts of first-degree felony attempted rape, and seven counts of third-degree felony gross sexual imposition.  The charges arose based on allegations that Rogers had sexually abused an under ten-year-old child and close family member on multiple occasions while in Warren County, Ohio between January 1, 2019 and August 2, 2022.

{¶ 3}   On July 24 through 26, 2023, the matter proceeded to a three-day jury trial.  Prior to trial, the state dismissed three of the 11 counts.  Rogers was tried for the following eight counts: one count of first-degree felony rape in violation of R.C. 2907.02(A)(1)(b) (Count 1); one count of first-degree felony attempted rape in violation of R.C. 2923.02 and 2907.02(A)(1)(b), which included an attempted rape specification pursuant to R.C. 2941.1419(A) (Count 2); four counts of third-degree felony gross sexual imposition in violation of R.C. 2907.05(B) (Counts 3, 4, 6, and 8); and two counts of third-degree felony gross sexual imposition in violation of R.C. 2907.05(A)(4) (Counts 5 and 7).[1]

{¶ 4}   On July 26, 2023, the jury returned a verdict finding Rogers guilty on all eight of the above-named counts, as well as on the single attempted rape specification.  Following the return of the jury's verdict, the trial court proceeded to sentencing.  The trial court merged Counts 1, 2 and 3 as allied offenses of similar import.  Upon the trial court's merger, the state elected to proceed with sentencing Rogers on Count 1.  This count, as set forth above, charged Rogers with first-degree felony rape in violation of R.C.

---

1.  R.C. 2941.1419(A), which sets forth the attempted rape specification attached to Count 2, "mandates an indefinite prison term of ten years to life when an offender is convicted of attempted rape and the victim is under ten years old at the time of the offense." *State v. Dix*, 8th Dist. Cuyahoga No. 112458, 2023-Ohio-4123, ¶ 3.

2907.02(A)(1)(b).[2]  Based on the state's election, the trial court then sentenced Rogers on Count 1 to an indefinite mandatory minimum sentence of 15 years to life in prison, less seven days of jail-time credit, and designated Rogers a Tier III sex offender/child-victim offender in accordance with R.C. 2950.01(G).

{¶ 5}  After imposing this sentence, the trial court then also sentenced Rogers to serve 60 months in prison on each of the five remaining counts of third-degree felony gross sexual imposition set forth in Counts 4, 5, 6, 7, and 8 of the indictment.  The trial court ordered each of those five 60-month prison sentences to be served concurrently to one another and to the indefinite 15-years-to-life prison sentence the trial court had imposed on Count 1.  This is in addition to the trial court notifying Rogers that he would be subject to a mandatory five-year postrelease control term when, and if, he was ever released from prison.

**Rogers' Appeal and Two Assignments of Error for Review**

{¶ 6}  On August 17, 2023, Rogers filed a notice of appeal.  Following briefing, oral argument was held before this court on March 11, 2024.  Rogers' appeal now properly before this court for decision, Rogers has raised two assignments of error for review.

{¶ 7}  Assignment of Error No. 1:

{¶ 8}  DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO CHALLENGE A BIASED JUROR FOR CAUSE, DEPRIVING ROGERS OF

---

2.  R.C. 2907.02(A)(1)(b) prohibits any person from engaging in "sexual conduct" with another, who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when "[t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."  The term "sexual conduct" is defined by R.C. 2907.01(A) to include "vaginal intercourse" between a male and female.  The term "sexual conduct" is also defined by R.C. 2907.01(A) to include "the insertion, however slight, of any part of the body" into the "vaginal opening" of another.  "Thus, when the phrases 'vaginal intercourse' and 'vaginal opening' are read together, it is apparent that sexual conduct occurs when there is penetration of the vaginal opening by a penis or other body part."  *State v. Strong*, 1st Dist. Hamilton Nos. C-100484 and C-100486, 2011-Ohio-4947, ¶ 53.  "This necessarily includes digital penetration of the victim's vaginal opening with a finger or fingers."  *State v. Zamora*, 12th Dist. Clermont Nos. CA2022-10-060 and CA2022-11-071, 2023-Ohio-1847, ¶ 7.

HIS RIGHT TO AN IMPARTIAL JURY.

{¶ 9} In his first assignment of error, Rogers argues his trial counsel was ineffective for failing to challenge for cause an alleged "biased juror," Juror McCarthy, pursuant to R.C. 2313.17(B)(9).[3] This failure, according to Rogers, deprived him of a fair and impartial jury guaranteed to him by the Sixth and Fourteenth Amendments to the United States Constitution. We disagree.

*Ineffective Assistance of Counsel Standard*

{¶ 10} "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7. Given this presumption, "[t]to prevail on an ineffective assistance of counsel claim, an appellant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984)." *State v. Ford*, 12th Dist. Madison No. CA2019-10-027, 2021-Ohio-782, ¶ 13. "[U]nder *Strickland*, in order to prevail on a claim that counsel was ineffective, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that that performance prejudiced him." *State v. Simpson*, 164 Ohio St.3d 102, 2020-Ohio-6719, ¶ 18, citing *Strickland* at 687. This requires the reviewing court to "determine whether the totality of circumstances supports a finding that counsel's performance was deficient, and if so, whether the deficient performance was prejudicial to the defendant." *State v. Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, ¶ 34. "The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim." *State v. Jewell*, 12th Dist. Warren No. CA2021-09-080, 2022-Ohio-2727, ¶ 19.

{¶ 11} "Trial counsel's performance is considered deficient where 'that counsel's

---

3. Although identified by just his last name, we have nevertheless changed the name of the juror in question for purposes of issuing this opinion.

performance fell below an objective standard of reasonable representation * * *.'" *State v. Zamora*, 12th Dist. Clermont Nos. CA2022-10-060 and CA2022-11-071, 2023-Ohio-1847, ¶ 21, quoting *State v. Drain*, 170 Ohio St.3d 107, 2022-Ohio-3697, ¶ 67. Therefore, to establish deficient performance, the "appellant must show that counsel made errors so serious that counsel failed to function as the 'counsel' guaranteed by the Sixth Amendment." *State v. Hamblin*, 37 Ohio St.3d 153, 156 (1988), citing *Strickland*, 466 U.S. at 687. "Trial counsel's deficient performance is deemed prejudicial where there exists 'a reasonable probability that, but for counsel's errors, the proceeding's result would have been different.'" *State v. Elcess*, 12th Dist. Warren No. CA2023-01-005, 2023-Ohio-2820, ¶ 22, quoting *State v. Lawson*, 165 Ohio St.3d 445, 2021-Ohio-3566, ¶ 93. Accordingly, to establish prejudice, the appellant must show "'that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable.'" *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, ¶ 51, quoting *Strickland*.

*What Rogers Must Establish to Prove His Trial Counsel was Ineffective*

{¶ 12} Given these principles, in order for Rogers to establish that his trial counsel's performance was deficient in this case, Rogers must establish that his trial counsel's performance was objectively unreasonable in light of his trial counsel's failure to challenge for cause the alleged "biased juror," Juror McCarthy, pursuant to R.C. 2313.17(B)(9).[4] *See State v. Bates*, 159 Ohio St.3d 156, 2020-Ohio-634, ¶ 25, citing *Hughes v. United States*, 258 F.3d 453, 461 (6th Cir.2001). As for prejudice, Rogers must establish that there exists a reasonable probability that his trial counsel's failure to

---

4. R.C. 2313.17(B)(9) sets forth one of the nine enumerated "good causes" for challenging any person called as a juror. *State v. Carter*, 7th Dist. Mahoning No. 15 MA 0225, 2017-Ohio-7501, ¶ 47. Specifically, "R.C. 2313.17(B)(9) provides that a prospective juror may be excused for cause when that person 'discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court.'" *Long v. Harding*, 12th Dist. Butler No. CA2020-11-120, 2021-Ohio-4240, ¶ 15.

challenge Juror McCarthy for cause deprived him of a fair and impartial jury guaranteed to him by the Sixth and Fourteenth Amendments to the United States Constitution. To do this, Rogers must show that Juror McCarthy was, in fact, actually biased against him. *Id.*, citing *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 67.

{¶ 13} "'Actual bias is "bias in fact"—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.'" *Id.*, quoting *United States v. Torres*, 128 F.3d 38, 43 (2d Cir.1997), citing *United States v. Wood*, 299 U.S. 123, 133, 57 S.Ct. 177 (1936). "Actual bias can be found from a juror's express admission or from circumstantial evidence of the juror's biased attitudes." *Id.* at ¶ 26, citing *Hughes* at 459. For example, courts have found actual bias where a juror unequivocally stated that she could not be fair due to law-enforcement bias, when a juror had a fixed opinion of the defendant's guilt based on pretrial publicity, when a juror expressed views on the death penalty that prevented or substantially impaired him from performing his duties as a juror, and where a Caucasian juror revealed in her jury questionnaire a blatant racial bias against Black people in a case where the defendant was Black. *Id.* at ¶ 26, 37.

*The Deficiency Prong*

{¶ 14} As for the first prong of the two-part *Strickland* test, the deficiency prong, Rogers argues that his trial counsel "performed deficiently" by failing to challenge for cause the alleged "biased juror," Juror McCarthy, pursuant to R.C. 2313.17(B)(9). The crux of this case, however, is not whether Rogers' trial counsel was deficient for failing to challenge Juror McCarthy for cause. This is because, as this court's research on this issue indicates, trial counsel's failure to challenge a juror who is actually biased against their client would, in nearly every conceivable circumstance, constitute deficient performance that falls below an objective standard of reasonable representation. This

holds true even though, as noted by the Ohio Supreme Court, "'[f]ew decisions at trial are as subjective or prone to individual attorney strategy as juror voir dire, where decisions are often made on the basis of intangible factors.'" *Mundt*, 2007-Ohio-4836 at ¶ 64, quoting *Miller v. Francis*, 269 F.3d 609, 620 (6th Cir.2001).

{¶ 15} "'[T]he decision whether to seat a biased juror cannot be a discretionary or strategic decision.'" *State v. Froman*, 162 Ohio St.3d 435, 2020-Ohio-4523, ¶ 49, quoting *Miller v. Webb*, 385 F.3d 666, 675 (6th Cir.2004). "If counsel's decision not to challenge a biased venireperson could constitute sound trial strategy, then sound trial strategy would include counsel's decision to waive, in effect, a criminal defendant's right to an impartial jury." *Hughes*, 258 F.3d at 463, citing *United States v. Martinez-Salazar*, 528 U.S. 304, 316, 120 S. Ct. 774 (2000) (holding that the seating of a biased juror who should have been dismissed for cause requires reversal of the conviction). "[T]here is no sound trial strategy that could support what is essentially a waiver of a defendant's basic Sixth Amendment right to trial by an impartial jury." *Miller*, 385 F.3d at 676. Therefore, rather than the first prong of the two-part *Strickland* test, the deficiency prong, it is instead that test's second part, the prejudice prong, that requires this court's attention.

*The Prejudice Prong*

{¶ 16} As stated previously, in order to satisfy the second prong of the two-part *Strickland* test, Rogers must establish that there exists a reasonable probability that his trial counsel's failure to challenge for cause the alleged "biased juror," Juror McCarthy, deprived him of a fair and impartial jury. To do this, Rogers must show that Juror McCarthy was, in fact, actually biased against him.

{¶ 17} Rogers argues that Juror McCarthy was actually biased against him, "and this was apparent from the start of the trial court's questioning." To support this claim,

Rogers points to several instances in the trial transcript where Juror McCarthy admitted during voir dire that he had concerns about his ability to remain fair and impartial given the disturbing nature of the charges for which Rogers had been accused. This includes Juror McCarthy stating, "I might have a hard time with it," in response to the trial court asking the original 13 prospective jurors seated in the jury box whether any of them would have any problem with "deciding what the truth is in this case," and determining whether the state had proven its case beyond a reasonable without applying "sympathy" and "prejudice," but instead being "fair when you're evaluating this case," when considering much of the state's evidence would be based on the testimony from a "child witness."

{¶ 18} This also includes Juror McCarthy stating, "It's a good question. I don't have an answer for you," when specifically asked by the trial court whether he could follow the trial court's instructions, including those instructions related to the presumption of Rogers' innocence and the application of the proof-beyond-a-reasonable-doubt standard necessary to prove Rogers' guilt, knowing that he was "having a hard time" with this case given the state's case was largely dependent on testimony from a child witness who he tended to "just want to favor," or whether he could "put that aside and listen to the evidence and be fair."

{¶ 19} This further includes Juror McCarthy stating, "I'd say it'd be hard for me to say that he's not guilty," and "people don't wind up here from not doing anything," when asked by Rogers' trial counsel what his verdict would be right then, guilty or not guilty, "knowing that there's a presumption of innocence," that Rogers was "innocent as he sits here right now, what would your verdict be?"[5] This is in addition to Juror McCarthy

---

5. We note that, in response to Juror McCarthy's statement that "people don't wind up here from not doing anything," Rogers' trial counsel stated, "Okay. That—that's what's going on in your head. That's an honest statement."

agreeing with the state that this type of case, a case involving the alleged sexual abuse of a child by a close family member, was not his "kinda case" and that he was "sure" the rest of the jury felt the same way.

{¶ 20} However, upon review, we disagree with Rogers' characterization of the record. That is to say, we disagree with Rogers' assertion that the record in this case firmly establishes that Juror McCarthy exhibited an actual bias against him. Rather, upon a thorough review of the record in this case, including an extensive review of the voir dire transcript, we find Juror McCarthy's statements set forth above are nothing more than Juror McCarthy verbalizing the internal struggle he was facing in determining whether he, or anybody else, could honestly be expected to be remain fair and impartial while empaneled on a jury tasked with determining the guilt or innocence of a man accused of sexually abusing a child and close family member. Juror McCarthy's struggle is certainly understandable, and his honesty in answering the difficult questions posed to him as a prospective juror commendable, and in no way indicative of an actual bias against Rogers. This is particularly true here when considering Juror McCarthy later responded "10" when asked by Rogers' trial counsel, "How important on a scale of one to 10 is it to be honest, just generally?"

{¶ 21} What is more, and what simply cannot be ignored, is the numerous occasions in which Juror McCarthy, as part of the original 13 prospective jurors seated in the jury box, agreed that he not only could, but would, remain fair and impartial if he was ultimately selected to serve as a juror in this case. This also included the several instances in which all 13 prospective jurors, including Juror McCarthy, expressly stated that they would follow the trial court's instructions and would not "change the law or apply your own idea of what you think the law should be." For example, when the prosecutor remarked that "[i]t is very important to follow the law that the Judge gives you on what I

have to prove to you," which the prosecutor followed up by asking whether "everybody here was willing to do that," the record indicates that the 13 prospective jurors responded "affirmatively." This included Juror McCarthy. The record indicates that Juror McCarthy also responded "affirmatively" when specifically asked by the prosecutor whether he could fulfill his duties if he were selected to be a juror in this case because he would have to "sit in judgment, right, and you're asked to do the right thing." This would necessarily include Juror McCarthy following the trial court's instructions in regard to presumption of Rogers' innocence and the proof-beyond-a-reasonable-doubt standard the state would need to overcome in order to establish Rogers' guilt.

{¶ 22} In light of the foregoing, and while it may be true that Juror McCarthy did express some hesitancy regarding his own ability, and the ability of any of the other 12 prospective jurors then seated with him in the jury box, to remain fair and impartial while empaneled on a jury that was tasked with determining the guilt or innocence of a man accused of sexually abusing a child and close family member, Juror McCarthy never stated that he either could not, or would not, be fair and impartial if he was selected as a juror in this case. *See, e.g., State v. Miller*, 12th Dist. Butler No. CA2009-04-106, 2010-Ohio-1722, ¶ 27, 35 (finding appellant's trial counsel was not ineffective for failing to use a peremptory challenge against an alleged biased juror where the record did not support appellant's claim that juror was actually biased against the appellant despite the juror expressing some "hesitation" as to whether the juror could be unbiased in rendering a verdict in a case where appellant was charged with shaking and severely injuring his days old infant daughter). The record indicates that Juror McCarthy had in fact stated the exact opposite.

{¶ 23} "Where jurors demonstrate during voir dire that they are able to remain fair and impartial, no action will lie for ineffective assistance of counsel for not seeking their

removal." *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 12. Such is the case here. Therefore, because Rogers did not establish that Juror McCarthy, because of his partiality or biases, was incapable and unwilling to decide the case based solely on the evidence presented at trial, Rogers has not established that there exists a reasonable probability that his trial counsel's failure to challenge Juror McCarthy for cause pursuant to R.C. 2313.17(B)(9) deprived him of a fair and impartial jury. *See Bates*, 2020-Ohio-634 at ¶ 25 (noting that, to prevail on his ineffective assistance of counsel claim, appellant "must prove that at least one of the jurors at his trial, because of the juror's partiality or biases, was not 'capable and willing to decide the case solely on the evidence' before that juror"), quoting *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940 (1982). Accordingly, Rogers' first assignment of error lacks merit and is overruled.

{¶ 24} Assignment of Error No. 2:

{¶ 25} THE PROSECUTOR COMMITTED MISCONDUCT THROUGH HIS IMPROPER COMMENTS THROUGHOUT THE TRIAL.

{¶ 26} In his second assignment of error, Rogers argues the prosecutor committed prosecutorial misconduct by making improper comments throughout trial, thereby mandating his conviction be reversed and a new trial ordered. We disagree.

*Prosecutorial Misconduct Standard*

{¶ 27} "For a conviction to be reversed on the basis of prosecutorial misconduct, a defendant must prove the prosecutor's acts were improper and that they prejudicially affected the defendant's substantial rights." *State v. Warnock*, 12th Dist. Madison No. CA2023-02-001, 2024-Ohio-382, ¶ 30, citing *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. "To demonstrate prejudice, a defendant must show that the improper acts were so prejudicial that the outcome of the trial would clearly have been different had

those improper acts not occurred." *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 42. "The focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor." *State v. Combs*, 12th Dist. Clermont No. CA2020-01-004, 2020-Ohio-5397, ¶ 19. A prosecutor's alleged misconduct "is not grounds for error unless the defendant has been denied a fair trial." *State v. Olvera-Guillen*, 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶ 27. "Therefore, a finding of prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial because of the prosecutor's prejudicial conduct." *State v. Carpenter*, 12th Dist. Clinton No. CA2022-02-005, 2023-Ohio-2523, ¶ 95. This is because a defendant is only "guaranteed a fair trial, not a perfect one." *State v. Miller*, 12th Dist. Preble No. CA2019-11-010, 2021-Ohio-162, ¶ 45.

*Rogers' Arguments and Analysis*

{¶ 28} As noted above, Rogers argues the prosecutor committed prosecutorial misconduct by making improper comments throughout his trial. Rogers claims these improper comments began during voir dire when the prosecutor stated that, in "almost all of my cases, [the] sexual assault[] occurred by someone who kn[e]w the child, right?" Rogers claims the prosecutor's improper comments then continued a short time later when the prosecutor stated during voir dire that, in his experience, it was "pretty common" for victims of sexual assault to "freeze" while being assaulted rather than to run away or fight off their attacker. Rogers claims the prosecutor's improper comments also included the prosecutor stating, "I've had very few cases where a child was sexually assaulted and witnessed by another person." However, upon review of the record, we do not find the prosecutor's comments, whether improper or not, to be so prejudicial that the outcome of Rogers' trial would clearly have been different had the prosecutor not made any of the

comments that he did.

{¶ 29} In reaching this decision, we note that the prosecutor's comments were made colloquially, and in a conversational manner, during a time when the prosecutor was admittedly trying to make the 13 prospective jurors then seated in the jury box "uncomfortable" in hopes that they would open up and speak to him more freely when answering his voir dire questioning. The challenged comments made by the prosecutor did not accuse Rogers of committing the charged offense or show the prosecutor's personal belief as to Rogers' guilt or innocence of the crimes charged. The prosecutor's comments also did not express his personal belief or opinion as to the credibility of any witness. This includes the credibility of the alleged child victim. Therefore, although we question the prosecutor's tactics, we find the prosecutor's statements set forth above were nothing more than isolated, generally benign statements that did not undermine the overall fairness of Rogers' trial. Rogers' argument otherwise lacks merit.

{¶ 30} Rogers argues the prosecutor also committed prosecutorial misconduct during his direct examination of the child victim. To support this argument, Rogers claims that it was improper for the prosecutor to ask the victim, "Did you tell the grand jury the truth about what had happened?" Rogers claims this question was improper in that it "bolstered" the victim's credibility based upon evidence that "was not and could not be presented at trial." Surely, it would be improper for the prosecutor to "bolster the testimony of a witness with statements of his or her personal belief in the credibility of the witness's testimony." *State v. Elliott*, 8th Dist. Cuyahoga No. 91999, 2009-Ohio-5816, ¶ 42. It would also be "improper for an attorney to vouch for the evidence by implying knowledge of facts outside the record." *State v. Ruggles*, 12th Dist. Warren Nos. CA2019-05-038 and CA2019-05-044 thru CA2019-05-046, 2020-Ohio-2886, ¶ 48. But, when taken in context, the prosecutor's question posed to the child victim about whether she

had testified truthfully to the grand jury was merely a part of a long line of questions meant to show the victim's testimony elicited at trial was consistent in that it contained the same allegations against Rogers that the victim had initially told to her mother, allegations that her mother then confronted Rogers with directly, as well as what the victim had told the social worker who interviewed her at a local child advocacy center. Therefore, in this context, we cannot say the prosecutor's question was improper.

{¶ 31} Regardless, even if we were to find the prosecutor's question improper, this was one, single question, that was brief in both the amount of time it took the prosecutor to ask the question, as well as the length of time it took the child victim to answer. What is more, shortly after this question was asked, the victim was then subject to cross-examination by Rogers' trial counsel. This included many questions that were intended to call into question the child victim's credibility and veracity in regard to the allegations of sexual abuse that she had levied against Rogers. Therefore, as the trier of fact, the jury had ample opportunity to assess the child victim's credibility by witnessing for itself the victim testifying about the alleged sexual abuse she claimed Rogers had perpetrated against her, independent of any improper witness vouching that may have taken place by the prosecutor. *See State v. Sanchez-Garza*, 12th Dist. Butler No. CA2016-02-036, 2017-Ohio-1234, ¶ 48. Accordingly, while we again question the prosecutor's tactics, we find the prosecutor's question set forth above was nothing more than one, isolated question that did not undermine the overall fairness of Rogers' trial. Rogers' argument otherwise again lacks merit.

{¶ 32} Rogers further argues the prosecutor committed prosecutorial misconduct during his rebuttal closing argument. To support this argument, Rogers initially claims that it was improper for the prosecutor to state at the start of his rebuttal that he was "sure" the child victim was not confused about what she claimed Rogers had done to her.

However, upon review, we again find ourselves in disagreement with how Rogers characterizes the record. What the prosecutor actually stated, when read in conjunction with the rest of the words in that sentence, and the other sentences making up that paragraph, was the following:

> I get a chance to respond. I promise I will not talk long. I want to respond to some specific things that [Rogers' trial counsel] brought up. One, [the child victim] is not confused. She is not confused. I really—I think during this argument was the first time I heard that apparently [the victim] was so traumatized by the touching that [another family member] did that she apparently became hallucinatory or something. *I'm sure where that—[the victim] is not confused.* This is the thing I want you to take from this. Every question, every suggestion that [Rogers' trial counsel] made, he had the opportunity to ask [the child victim] about, and he didn't. You know you asked her those questions? I did. Because you know that she's not confused.
>
> [Rogers' trial counsel] could have asked [the victim], didn't you make this up? He didn't. [Rogers' trial counsel] could have asked her, aren't you confusing [Rogers] with [this other family member]? But he didn't. He doesn't want to hear what [the victim's] answers are. He wants to just throw suggestions out to you and I've kind of lost counting how many there are.

(Emphasis added.)

{¶ 33} When reviewing the italicized language set forth above, this was clearly an attempt by the prosecutor to state, "I'm [not] sure where that [idea came from]. [The victim] is not confused," and not, as Rogers suggests within his appellate brief, the prosecutor stating, "I'm sure * * * [the victim] is not confused." To claim otherwise, like Rogers does in his appellate brief, is to completely ignore the words "where that" and the context in which those words were actually spoken by the prosecutor in this case. Therefore, when read in its proper context, such a statement was not improper and cannot form the basis of a prosecutorial misconduct claim. Rogers' claim otherwise lacks merit.

{¶ 34} Regardless, even if we were to assume Rogers' reading of the record was

- 15 -

correct, it is well established that, in closing argument, "[a] prosecutor may bolster his witnesses, may state that the evidence supports the conclusion that his witnesses are telling the truth, and may, in his rebuttal, state that the evidence does not support the defense's conclusions or that certain witnesses are more or less believable." *State v. Cisternino*, 11th Dist. Lake No. 99-L-137, 2001 Ohio App. LEXIS 1593, *14-*15 (Mar. 30, 2001). More specifically, in rebuttal, the prosecutor may:

> argue that the evidence does not support the conclusion postulated by defense counsel. He may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on. He may conclude by arguing that these circumstances make the witnesses more or less believable and deserving of more or less weight.

*State v. Fether*, 5th Dist. Stark No. 2011-CA00148, 2012-Ohio-892, ¶ 67, quoting *State v. Draughn*, 76 Ohio App.3d 664, 670-671 (5th Dist.1992).

{¶ 35} While certainly unartfully done, when the challenged statement is reviewed in context, that was essentially what the prosecutor was doing in this case. That is to say, by claiming the child victim was not confused about what Rogers had done to her, the prosecutor was doing nothing more than arguing that the evidence did not support the conclusion postulated by Rogers' trial counsel. That being, Rogers' trial counsel's argument that the victim had become so traumatized by what another close family member had done to her that she believed the allegations of sexual abuse that she had levied against Rogers were true when they were not. Therefore, when taken in its proper context, we find the prosecutor's statement set forth above was neither improper nor was the prosecutor's statement prejudicial so as to affect Rogers' substantial rights. The prosecutor's comment was instead permissible commentary based on the evidence properly admitted at trial. Rogers' argument otherwise lacks merit.

{¶ 36} Rogers lastly argues the prosecutor committed prosecutorial misconduct by telling the jury that the child victim had been consistent in the allegations she had levied against him "over and over again." Rogers argues that this statement was improper because the prosecutor was "referring to [the victim's] grand jury testimony, and expressly telling the jury that the witness's testimony was corroborated by evidence known to the government but not known to the jury." But, just as before, we once again find ourselves in disagreement with how Rogers characterizes the record. What the prosecutor actually stated, when the words "over and over again" are read in conjunction with the rest of the prosecutor's words used in that sentence, and the other sentences making up that portion of the prosecutor's rebuttal, was the following:

> [The victim] knows who [the other family member who abused her] is and [she] knows who [Rogers] is. [The victim] knows what [the one family member] did to her and she knows what [Rogers] did to her. [The victim] is not impressionable. Even her own grandmother had to admit that she's pretty smart. You had plenty of opportunity to see her. I agree, yes, that she was sheltered. And that's important because what's the—you know, available information for the detailed descriptions of abuse that happened to her.
>
> But you want to talk about fanciful, *I can't even imagine what it would take to try to convince an eight-year-old child to repeat over and over again, consistently abuse in that level of detail.* That's fanciful.

(Emphasis added.)

{¶ 37} "[I]t is well established that a prosecutor's latitude in closing argument is wider on rebuttal where the prosecutor has room to respond to closing arguments of defense counsel." *State v. King*, 12th Dist. Clermont No. CA2022-01-001, 2022-Ohio-3388, ¶ 50, citing *State v. Farwell*, 12th Dist. Clermont No. CA2001-03-041, 2002 Ohio App. LEXIS 1888, *32 (Apr. 22, 2002). Therefore, when taken in its proper context, we find the prosecutor's statement set forth above was neither improper nor was the

prosecutor's statement prejudicial so as to affect Rogers' substantial rights. The prosecutor's comment, while possibly alluding to the victim's grand jury testimony as one example of the child victim's consistent, unwavering allegations of sexual abuse that she had levied against Rogers, was permissible commentary based on the arguments advanced by Rogers' trial counsel during counsel's own closing argument. That being, rather than the "fanciful" or "hallucinatory" allegations of a confused child, the child victim's allegations of sexual abuse against Rogers were consistent in that the victim's allegations repeatedly accused Rogers of sexually abusing her in the same manner and on multiple occasions over a period of several years while in Warren County, Ohio between January 1, 2019 and August 2, 2022. Accordingly, because we find no merit to any of the arguments advanced by Rogers herein, Rogers' second assignment of error also lacks merit and is overruled.

**Conclusion**

{¶ 38} For the reasons outlined below, and finding no merit to any of the arguments advanced here in in support of Rogers' two assignments of error, Rogers' appeal challenging his conviction for one count of first-degree felony rape and five counts of third-degree felony gross sexual imposition of a child who, at all times relevant, was under the age of ten years old, is denied.

{¶ 39} Judgment affirmed.

HENDRICKSON and PIPER, JJ., concur.