**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Rogers*, Slip Opinion No. 2025-Ohio-4794.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-Ohio-4794

THE STATE OF OHIO, APPELLEE, *v.* ROGERS, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Rogers*, Slip Opinion No. 2025-Ohio-4794.]**

*Trials—Jury selection—Voir dire—In determining whether a juror was actually biased, a reviewing court must consider entire record and determine whether it demonstrates that juror was actually biased against the defendant—Court of appeals did not err by considering group answers to questions addressed to all prospective jurors in determining whether juror was biased—Court of appeals' judgment affirmed.*

(No. 2024-0872—Submitted April 2, 2025—Decided October 22, 2025.)

APPEAL from the Court of Appeals for Warren County,

No. CA2023-08-063, 2024-Ohio-1637.

_____

DEWINE, J., authored the opinion of the court, which Kennedy, C.J., and FISCHER, DETERS, HAWKINS, and SHANAHAN, JJ., joined. BRUNNER, J., dissented.

**DeWine, J.**

**{¶ 1}** A jury found Todd Jeffrey Rogers guilty of multiple sexual offenses against his daughter, including rape. He claims that his attorney provided ineffective assistance of counsel by failing to challenge one of the jurors for cause.

**{¶ 2}** Because Rogers's trial attorney did not object to the empaneling of the juror, the only way Rogers can now succeed on his claim is by demonstrating that the juror was actually biased against him. Having reviewed the transcript of the jury voir dire, we conclude that Rogers has failed to meet the difficult burden of establishing actual bias. The Twelfth District Court of Appeals reached the same conclusion, so we affirm its judgment.

## I. Rogers's Trial and the Voir Dire of Juror McCarthy

**{¶ 3}** Rogers was charged with, and convicted of, raping and otherwise sexually abusing his daughter when she was between five and nine years old. At issue in this appeal is the selection of the jury that convicted Rogers—in particular, defense counsel's decision not to challenge for cause a juror who we will refer to as Juror McCarthy.

**{¶ 4}** At trial, Rogers's daughter was expected to testify, and ultimately did testify, that she would routinely go to her father's bed after eating breakfast on Friday mornings, get under the blankets with him, lay on top of him, and he would scratch her back. On some occasions, Rogers would touch her "private part," both over and inside her underwear. On one occasion, Rogers "touched [her] on the inside" of her private part, "mov[ing his finger] around . . . inside." After about three and a half years of this abuse, the daughter told her mother, Rogers's wife, what had been happening. Rogers's wife confronted him with the allegations, but he denied them. Rogers's wife contacted the police, leading to the charges against him.

**{¶ 5}** This difficult subject matter faced the prospective jurors who walked into the Warren County Court of Common Pleas one summer morning in 2023 for

Rogers's trial. Of course, the prospective jurors did not know this when they entered the courtroom.

{¶ 6} The trial judge began jury selection by telling the prospective jurors that they had been called for a criminal case and by identifying Rogers, defense counsel, the prosecuting attorney, and a police detective who was seated with the prosecutor at the counsel table. The judge then instructed the prospective jurors on the presumption of innocence and the State's burden to prove guilt beyond a reasonable doubt.

{¶ 7} After telling the prospective jurors that Rogers did not have to prove anything in the case and did not need to present witnesses or evidence, the judge noted that some of the prospective jurors looked surprised. The judge explained that while that might seem unusual "in everyday life," in the courtroom, one does not have to prove his innocence. He said that while a person might be arrested or indicted by a grand jury, the trial was the defendant's first real opportunity to have his side fully presented.

{¶ 8} Next, the trial judge discussed the charges against Rogers. He asked the prospective jurors whether any of them would have trouble separating "sympathy" and "prejudice" from "the truth" in a child witness's statements. At this point, Juror McCarthy spoke up and said that, to be honest, he "might have a hard time with it." The following exchange ensued:

> The Court: Do you think you can follow the instructions I give to you in this case, knowing [that you're] having a hard time because this is a child witness and [you] tend to just want to favor this child? Can you put that aside and listen to the evidence—and be fair?
>
> Juror McCarthy: It's a good question. I don't have an answer for you.

Juror McCarthy's equivocal answer prompted the judge to say that he would "leave that to the attorneys to explore." The judge proceeded to ask several other questions to the jury pool about child witnesses and individually addressed other prospective jurors. After the judge concluded, he allowed the attorneys to voir dire the prospective jurors.

{¶ 9} The prosecutor began by explaining the definition of rape in Ohio and that it encompasses acts beyond forced intercourse. He told the prospective jurors that rape does not require forcible sexual conduct if the victim is under 13 years old and that the insertion of a finger into the vaginal area qualifies as sexual conduct. The prospective jurors agreed to apply Ohio's definition of rape.

{¶ 10} Having explained the elements of rape, the prosecutor asked the prospective jurors, "How do you think the victim of a sexual assault is supposed to react?" Prospective jurors variously answered that they expected a victim to be scared or angry after an assault. The prosecutor asked the prospective jurors whether a child might not immediately report inappropriate sexual conduct. Multiple prospective jurors voiced their belief that a child victim would be less likely than an adult to report having been raped, especially if the child has a close relationship with the abuser or the child is too young to understand the wrongness of the sexual conduct.

{¶ 11} At this point, the prosecutor said, "I see, [Juror McCarthy], you're making faces." Juror McCarthy pushed back on the idea that one would always expect children to react differently to being raped compared to adults:

> I think it depends . . . [;] there's plenty of situations that come up
> where there's young people, and there's older people. They
> probably all react—if you looked at all the reactions—similar. . . .
> So it's not just a—you know, a kid that doesn't know is just as scared

4

as someone that does. It's circumstantial. So I'm not sure the reaction is gonna be any different.

The prosecutor agreed with Juror McCarthy that the circumstances, especially the relationship of the people involved, are important. He asked the prospective jurors whether they would agree not to make any decision on the case until they heard the circumstances. The prospective jurors all agreed.

{¶ 12} The prosecutor moved on to a discussion of the evidence that would be presented. He explained that the State did not intend to introduce DNA evidence and that most of the evidence would come from the testimony of Rogers and his daughter. He asked the prospective jurors whether they would be comfortable basing their decision on a child's testimony about her experiences of sexual abuse. The prosecutor noted that Juror McCarthy was shaking his head, and Juror McCarthy explained: "I might be expressive. I apologize. Just—I'm sure all of us feel the same way." The prosecutor sympathized that it was normal to feel uncomfortable but said he wanted Juror McCarthy to speak up if he felt that he could not handle the demands of the case. Juror McCarthy said nothing in response.

{¶ 13} The prosecutor concluded his voir dire by talking about evaluating the truthfulness of child-witness testimony, the value of circumstantial evidence, and the reasonable-doubt standard. For his final question, the prosecutor specifically named Juror McCarthy and another prospective juror and asked whether they felt they could "sit in judgment" and "do the right thing" in this case. Both indicated that they could.

{¶ 14} Defense counsel began his voir dire examination by addressing the presumption of innocence. He acknowledged that it was "very normal" for the prospective jurors to wonder "what [Rogers] did" upon entering the courtroom and seeing him seated at counsel table. But defense counsel stressed that as jurors, they

would have to disregard that natural inclination because Rogers was presumed innocent.

{¶ 15} After that preamble, defense counsel began to address individual prospective jurors about the presumption of innocence. He had this exchange with Juror McCarthy:

Defense Counsel: Mr. [McCarthy], what would your verdict be if we asked your verdict right now?

Juror McCarthy: Well, I'd say when I first came in, that's my—I didn't know why I was here.

Defense Counsel: Yeah.

Juror McCarthy: And that's the person [Rogers] that's there. So, yeah, that's the first question I had in my mind.

Defense Counsel: Great.

Juror McCarthy: But then when the subject matter [of the case] was revealed, then that was a different feeling and reaction.

Defense Counsel: Yeah. So good. So if you had to give us a verdict right now, guilty or not guilty, knowing that there's a presumption of innocence, that [Rogers is] innocent as he sits here right now, what would your verdict be?

Juror McCarthy: I'd say it'd be hard for me to say that he's not guilty.

Defense Counsel: It'd be hard for you to say—

Juror McCarthy: Yeah, because we're here. We're—

Defense Counsel: Ahh.

Juror McCarthy: And there's someone here from the police department that's—

Defense Counsel: Right.

Juror McCarthy: —that's gonna talk.  So, yeah, people don't wind up here from not doing anything.

Defense Counsel: Okay.  That—that's what's going on in your head.  That's an honest statement.  Does anyone see it differently?

Defense counsel posed similar questions about the presumption of innocence to other prospective jurors.  It soon became clear that Juror McCarthy was not the only one struggling with applying the concept.  Another prospective juror called the presumption of innocence "a fundamental basis of our laws" and said that he would have no difficulty applying the presumption.  But when defense counsel asked him what his verdict would be if he had to render one right now without any evidence having been presented, the prospective juror answered, "I couldn't do that because I haven't heard the full story."

{¶ 16} Realizing that the prospective jurors were struggling with his hypothetical question, defense counsel explained, "I was trying to get someone to say . . . if you had [to give] a verdict now, because there's been no evidence presented, [Rogers is] not guilty because that's the law, that the Prosecutor has a responsibility of proving each and every element of the offense."  After a longer explanation of why "not guilty" was the right answer, defense counsel asked the prospective jurors whether any of them disagreed or thought that was not the right answer.  No one spoke up.  Defense counsel then asked whether anyone had questions about "not guilty" being the right answer.  The prospective jurors, including Juror McCarthy, collectively indicated that they had no questions.

{¶ 17} Defense counsel turned to the credibility of child witnesses.  Rogers's defense at trial was that the allegations against him were fabricated by his wife and that she was putting words into their daughter's mouth.  So defense counsel questioned prospective jurors about whether children are impressionable

and "want to please their parents." Juror McCarthy was among the prospective jurors singled out for this question. Like the other prospective jurors questioned, he agreed that children are impressionable and want to please their parents.

{¶ 18} Before concluding voir dire, defense counsel asked the prospective jurors to rate the importance of honesty on a scale from one to ten. Juror McCarthy rated it a ten.

{¶ 19} At the close of voir dire, Rogers's attorney challenged one of the other prospective jurors for cause, but he did not elect to challenge Juror McCarthy. Rogers's attorney also exhausted his peremptory challenges, excusing four prospective jurors, but not Juror McCarthy. Juror McCarthy was empaneled on the jury, and the jury ultimately found Rogers guilty of several sex offenses, including rape.

## II. Rogers's Appeals

{¶ 20} Rogers appealed his convictions to the Twelfth District. He argued, among other things, that his trial counsel was constitutionally ineffective for not challenging for cause Juror McCarthy, who Rogers claimed tainted the jury and deprived him of a fair trial. *See* 2024-Ohio-1637, ¶ 9 (12th Dist.). The court of appeals found no merit to Rogers's argument and upheld his convictions. *Id.* at ¶ 38. Based on "an extensive review of the voir dire transcript," the court characterized Juror McCarthy's statements as "nothing more than [his] verbalizing the internal struggle he was facing." *Id.* at ¶ 20.

{¶ 21} It was clear to the court of appeals that Juror McCarthy was voicing abstract doubt "whether he, or anybody else, could honestly be expected to be remain fair and impartial while empaneled on a jury tasked with determining the guilt or innocence of a man accused of sexually abusing a child and close family member." *Id.* It saw the statements as "in no way indicative of an actual bias against Rogers." *Id.* The court also noted the many times Juror McCarthy—in response to the group questions addressed to all the prospective jurors—indicated

alongside the rest of the group that he would be fair and impartial, would apply the presumption of innocence, and would hold the State to the requirement of proof beyond a reasonable doubt. *Id.* at ¶ 21.

{¶ 22} Because Rogers had not shown that Juror McCarthy was actually biased against him, the Twelfth District rejected his claim that he had received ineffective assistance of counsel and ultimately affirmed his convictions. *Id.* at ¶ 23, 39.

{¶ 23} We accepted Rogers's appeal on two propositions of law. *See* 2024-Ohio-3313. In the first, Rogers argues that a prospective juror who has expressed partiality cannot be rehabilitated through group answers in voir dire. In the second, he argues that for a prospective juror to be rehabilitated, he must individually affirm that he can be impartial. Because the propositions are closely related, we address them together.

### III. Prevailing on an Ineffective-Assistance Claim Based on Empaneling of Biased Juror

{¶ 24} Because Rogers's attorney did not object to the seating of Juror McCarthy on the jury, Rogers can only prevail by demonstrating that his counsel was constitutionally ineffective. That is, Rogers must establish that his counsel's performance was so inadequate that he was denied the right to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.[1]

{¶ 25} To prevail on a claim of ineffective assistance of counsel, a defendant ordinarily must show "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the

---

1. Rogers has not raised a claim under Article I, Section 10 of the Ohio Constitution, which guarantees that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel."

proceeding's result would have been different." *State v. Mundt*, 2007-Ohio-4836, ¶ 62, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984). Both the deficient-performance and prejudice prongs must be met for a successful ineffective-assistance claim; neither is individually sufficient. *See State v. Madrigal*, 2000-Ohio-448, ¶ 49 ("A defendant's failure to satisfy one prong . . . negates a court's need to consider the other.").

{¶ 26} In this case, however, Rogers argues that he does not need to establish the prejudice prong of the *Strickland* standard. He argues, instead, that prejudice should be presumed because Juror McCarthy was actually biased against him.

{¶ 27} The United States Supreme Court has never addressed whether prejudice may be presumed under *Strickland* when defense counsel fails to object to a biased juror. In *Strickland*, the Court identified only a few limited circumstances in which prejudice would be presumed: when there has been "[a]ctual or constructive denial of the assistance of counsel altogether," when the State has interfered with counsel's assistance, and when counsel has labored under a conflict of interest. *Strickland* at 692; *see also Weaver v. Massachusetts*, 582 U.S. 286, 308 (2017) (Alito, J., concurring in the judgment) ("The Court has relieved defendants of the obligation to make this affirmative showing in only a very narrow set of cases in which the accused has effectively been denied counsel altogether.").

{¶ 28} Although the United States Supreme Court has never held that *Strickland* prejudice should be presumed based on the presence of a biased juror, it has held that when an objection is properly preserved, the presence of a biased juror would mandate the reversal of a conviction. *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *United States v. Martinez-Salazar*, 528 U.S. 304, 316-317 (2000). Based on this principle, federal circuit courts have expanded the categories in which prejudice may be presumed under *Strickland* to include instances when there has been a showing that a juror was actually biased against a particular defendant. *See,*

*e.g.*, *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001), citing *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001); *Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir. 1995).

{¶ 29} We adopted this type of actual-bias standard in *Mundt*, 2007-Ohio-4836. There, we held that a defendant could establish prejudice under *Strickland* by showing that counsel failed to object to the empanelment of a juror who was actually biased against the defendant. *Id.* at ¶ 67. We explained that "[w]hen a defendant bases an ineffective-assistance claim on an assertion that his counsel allowed the impanelment of a biased juror, the defendant '*must* show that the juror was *actually biased* against him.'" (Emphasis added in *Mundt*.) *Id.*, quoting *Miller* at 616, citing *Hughes* at 458.

{¶ 30} Actual bias means "'bias in fact'—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997), citing *United States v. Wood*, 299 U.S. 123, 133 (1936). "'[T]he mere existence of any preconceived notion as to the guilt or innocence of an accused'" is insufficient to rebut the presumption that a juror is impartial. *State v. Warner*, 55 Ohio St.3d 31, 47 (1990), quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). An impression or opinion does not make a juror partial unless that juror cannot "'lay aside [the] impression or opinion and render a verdict based on the evidence presented in court.'" *Id.*, quoting *Irvin* at 723.

{¶ 31} A juror is not actually biased simply because he has some prior belief about an issue. *Griffin v. Bell*, 694 F.3d 817, 824 (7th Cir. 2012). Thus, a juror's prior belief that certain types of witnesses might be more believable than others (e.g., law-enforcement officers) is not a basis to dismiss a juror for cause unless the juror presents "an irrational or unshakeable bias that indicate[s] an inability or unwillingness to faithfully and impartially apply the law." *Id.*

**{¶ 32}** By its nature, the presumption of prejudice afforded by a showing of actual bias is difficult to attain. Actual bias is a high bar for a few reasons.

**{¶ 33}** First, prospective jurors are presumed impartial, so it is incumbent on the party challenging the empanelment of a juror to overcome that presumption to establish bias. *Warner*, 55 Ohio St.3d at 47, citing *Reynolds v. United States*, 98 U.S. 145, 157 (1878).

**{¶ 34}** Second, there are difficulties inherent in assessing the passions of jurors from a cold transcript. For one thing, "'[w]ritten records give us only shadows for measuring the quality of [counsel's] efforts' " in selecting a jury. *Mundt*, 2007-Ohio-4836, at ¶ 64, quoting *Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989). The demeanor of a juror, which normally does not appear in the appellate record, "is oftentimes more indicative of the real character of [the juror's] opinion than [the juror's] words." *Reynolds* at 156-157. For another, "[j]urors . . . cannot be expected invariably to express themselves carefully or even consistently." *Patton v. Yount*, 467 U.S. 1025, 1039 (1984). So appellate courts reviewing voir dire are given the difficult task of squaring inconsistent juror statements in an inherently limited record.

**{¶ 35}** Third, and most important, appellate courts must be "highly deferential" to trial counsel's performance, *Strickland*, 466 U.S. at 689. Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," the United States Supreme Court has cautioned that "the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." *Harrington v. Richter*, 562 U.S. 86, 105 (2011), quoting *Strickland* at 690.

**{¶ 36}** The "range of reasonable professional assistance" is "wide," *Strickland* at 689, and even "debatable trial tactics do not establish ineffective assistance of counsel," *State v. Conway*, 2006-Ohio-2815, ¶ 101, so this court does

not "'second-guess trial strategy decisions,'" *Mundt* at ¶ 63, quoting *State v. Mason*, 1998-Ohio-370, ¶ 83.  This deference is particularly important when analyzing attorney performance at voir dire, one of the most "'subjective'" aspects of trial, involving "'decisions [that] are often made on the basis of intangible factors.'" *Id.* at ¶ 64, quoting *Miller*, 269 F.3d at 620.  Therefore, this court does not "impose 'hindsight views about how current counsel might have voir dired the jury differently.'" *Id.* at ¶ 63, quoting *Mason* at ¶ 83.  As the Utah Supreme Court has explained, "[i]t is generally inappropriate for a trial court to interfere with counsel's conscious choices in the jury selection process, notwithstanding the existence of a reasonable basis for objecting to those jurors." *State v. Litherland*, 2000 UT 76, ¶ 32.  Thus, "[o]nly where a juror expresses a bias or conflict of interest that is so strong or unequivocal as to inevitably taint the trial process should a trial court overrule trial counsel's conscious decision to retain a questionable juror." *Id.*

{¶ 37} The actual-bias standard for presuming prejudice necessarily means that when the voir dire record demonstrates only a possibility or a potential that a juror was biased, prejudice may not be presumed.  Thus, when the voir dire transcript indicates statements that suggest potential bias but fall short of demonstrating actual bias, and counsel neglected to follow up on such statements, prejudice cannot be presumed.  *See State v. King*, 2008 UT 54, ¶ 38 ("The effect of extending the *Strickland* presumption of prejudice to errors of counsel that allow the seating of potentially biased jurors would be to distort a well-developed body of law that strikes a proper balance between the interests of the adversarial process and the guarantees of a fair trial in the jury selection process."); *see also State v. Romero*, 2023-NMSC-014, ¶ 19 ("The record in this case discloses at most potential bias that, absent further proof, does not rise to a constitutional violation.").

## IV. Rogers Has Not Demonstrated that Juror McCarthy Was Actually Biased Against Him

{¶ 38} As we have explained, to prevail on a claim of ineffective assistance of counsel, a defendant must establish both that his counsel's performance was deficient and that he was prejudiced by that deficient performance. In the proceeding below, the Twelfth District focused on only the second prong of the test—whether prejudice could be presumed because of the presence of a biased juror. It reasoned that it was unnecessary to consider whether Rogers's counsel was deficient because if Rogers established that Juror McCarthy was actually biased, "in nearly every conceivable circumstance," failing to challenge a biased juror for cause constitutes deficient performance. 2024-Ohio-1637 at ¶ 14 (12th Dist.).

{¶ 39} The United States Supreme Court has made clear that in adjudicating a claim of ineffective assistance of counsel, the prongs of the *Strickland* test may be considered in any order and that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697. In this case, we agree with the court of appeals that because the question of whether Juror McCarthy was actually biased is so closely tied to the question of whether counsel rendered deficient performance in opting not to challenge him for cause, it is appropriate to proceed directly to the question of actual bias.

{¶ 40} Rogers's argument that Juror McCarthy was actually biased is centered on two sets of statements. He contends that Juror McCarthy demonstrated actual bias based on comments that (1) he would tend to favor the testimony of a child witness and (2) he presumed that Rogers was guilty because he was on trial.

{¶ 41} In reviewing claims of actual bias that are based on the jury-selection process, we consider the totality of the evidence, considering whether the voir dire transcript as a whole demonstrates that the juror was actually biased. *See Holder v. Palmer*, 588 F.3d 328, 340 (6th Cir. 2009) ("In assessing whether a juror was

14

actually biased against a defendant, this court considers the totality of the juror's statements."). We begin with the two subjects on which Rogers predicates his claim of actual bias: evaluation of the testimony of child witnesses and the presumption of innocence.

### A. Juror McCarthy's Statements About Child Witnesses Do Not Show Actual Bias

{¶ 42} In support of his claim that Juror McCarthy was actually biased against him, Rogers first focuses on Juror McCarthy's statements during voir dire about his uneasiness assessing the testimony of a child witness. Specifically, he points to Juror McCarthy's comment that he "might have a hard time" evaluating a case involving a child witness and his subsequent response, "I don't have an answer for you," when asked by the judge whether he could put aside his feelings, listen to the evidence, and be fair.

{¶ 43} A review of the entire transcript reveals, however, that Juror McCarthy had a nuanced view about child witnesses that became evident as voir dire progressed. For example, when other prospective jurors agreed with the prosecutor's suggestion that child victims would react differently than adults to a sexual assault and might be reluctant to report it, Juror McCarthy pushed back. In his view, it wasn't necessarily the case that a child would react differently than an adult. Juror McCarthy also agreed with defense counsel's statements that children were impressionable and wanted to please their parents.

{¶ 44} Taken as a whole, the transcript demonstrates that Juror McCarthy initially expressed a natural discomfort when confronted with the task of hearing a sex-abuse case involving a child. But at the same time, his answers revealed that he was open to important parts of the defense's case—specifically, arguments that the victim's delay in reporting abuse made it less likely that abuse actually occurred and that the mother was foisting a fabricated tale of abuse on an impressionable child. His belief that a child's reaction to abuse would depend on the circumstances

is the opposite of "a bias that would prevent him . . . from individually weighing the facts of the case," *State v. Madison*, 2020-Ohio-3735, ¶ 24.

{¶ 45} The voir dire transcript demonstrates that Juror McCarthy acknowledged that the difficult subject of the trial would pose a challenge to him, as it would to most jurors. It does not demonstrate that Juror McCarthy had an unalterable predisposition to find the defendant guilty regardless of the evidence or that he would not follow the judge's instructions. We conclude that Rogers has failed to meet his burden to demonstrate that Juror McCarthy was actually biased based on his statements about child witnesses.

### B. *Juror McCarthy's Statements About the Presumption of Innocence Do Not Show Actual Bias*

{¶ 46} Rogers next argues that Juror McCarthy's answers regarding the presumption of innocence show that he had actual bias. Here, he relies on Juror McCarthy's answer that "it'd be hard for [him] to say [that Rogers is] not guilty" in response to defense counsel's hypothetical question asking what his verdict would be if he had to render one before trial.

{¶ 47} Juror McCarthy's comments are not unlike juror comments in *Patton*, 467 U.S. 1025, that the United States Supreme Court concluded did not require the excusal of a juror for cause. There, a defendant challenged the empanelment of jurors who "had formed an opinion as to [the defendant's] guilt" because of pretrial publicity. *Id.* at 1028-1030. One juror said during voir dire that he believed the defendant was guilty based on what he had read in the newspapers, that it would take evidence to overcome his prior beliefs, and that it would be difficult for him to answer whether he could apply the presumption of innocence. *Id.* at 1030; *id.* at 1048-1049 (Stevens, J., dissenting). But the juror also said that he could enter the jury box with an open mind and that he could alter his original belief based on the facts presented. *Id.* at 1039; *id.* at 1049 (Stevens, J., dissenting). The Court concluded that the "ambiguity" in the juror's testimony was an

16

insufficient basis to find that the trial court erred in failing to excuse the juror. *Id.* at 1039-1040.

{¶ 48} Here, in struggling with counsel's hypothetical question, Juror McCarthy voiced his assessment that generally, "people don't wind up [on trial] from not doing anything." Such feelings are common and not by themselves evidence of actual bias. As the United States Court of Appeals for the Seventh Circuit has explained, "[a] person told that X had been indicted, and asked whether he thought X guilty, might reply that he thought X probably was guilty because few innocent people are indicted." *Thompson v. Altheimer & Gray*, 248 F.3d 621, 625 (7th Cir. 2001). That answer certainly evidences a prior belief, but it would show a bias only "if, for example, the person added, 'Nothing will ever convince me that the government would indict an innocent person.'" *Id.*

{¶ 49} Juror McCarthy was not the only prospective juror to struggle with the hypothetical question about the presumption of innocence. In response, defense counsel explained why "not guilty" was the right answer. None of the prospective jurors spoke up when defense counsel asked whether anyone "disagrees with that or thinks that's not the right answer." And all the prospective jurors collectively indicated that they had no questions about "not guilty" being the right answer.

{¶ 50} A review of the voir dire transcript reveals that Juror McCarthy was not hesitant to speak out when he had a question or disagreed with a statement made by counsel. And when defense counsel asked Juror McCarthy to rate the importance of honesty on a scale from one to ten, he answered ten. If Juror McCarthy was still confused about applying the presumption of innocence after counsel's explanation, there is no reason to think that he would not have said so.

{¶ 51} Juror McCarthy's answers regarding the presumption of innocence do not demonstrate actual bias against Rogers.

## V. The Court of Appeals Did Not Err by Considering Group Answers in Determining Whether Juror McCarthy Was Biased

{¶ 52} Rogers presents two propositions of law for our review, both taking aim at what he describes as the court of appeals' consideration of "group answers" to voir dire questions in its determination that Rogers failed to establish that Juror McCarthy was actually biased against him. Underlying Rogers's argument is a premise that Juror McCarthy's individual answers establish that he was actually biased against him. He argues that because Juror McCarthy's answers established actual bias, the court of appeals should not have relied on group answers to "rehabilitate" him. Indeed, Rogers argues that group answers must be disregarded in determining whether a prospective juror is actually biased.

{¶ 53} We reject the underlying premise of Rogers's argument. As we have already explained, we are not convinced that Juror McCarthy's initial individual answers, by themselves, were sufficient to demonstrate actual bias.

{¶ 54} Nor do we find it appropriate to adopt a blanket rule forbidding consideration of group answers. Instead, in determining whether a juror was actually biased, a reviewing court must consider the entire record and determine whether it demonstrates that the juror was actually biased against the defendant.

{¶ 55} In support of his argument, Rogers relies on three cases—*Johnson v. Armontrout*, 961 F.2d 748 (8th Cir. 1992), *Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001), and *Morgan v.* Illinois, 504 U.S. 719 (1992)—in which courts in other contexts found collective responses by prospective jurors inadequate, by themselves, to ensure impartiality. In *Johnson*, several jurors had previously served on a jury that convicted the accused's codefendant of the same robbery. *Johnson* at 750. Not surprisingly, the United States Court of Appeals for the Eighth Circuit concluded that the collective silence of the entire jury panel in response to two questions about whether they could put aside evidence they had heard at the prior

trial and rely on the evidence presented at the upcoming trial was insufficient to demonstrate the jurors' impartiality. *Id.* at 750, 755-756.

{¶ 56} In *Hughes*, the United States Court of Appeals for the Sixth Circuit held that "silence in the face of generalized questioning" of the whole venire was insufficient to demonstrate the impartiality of a prospective juror who had admitted that she could not be fair. *Hughes* at 456, 461.

{¶ 57} In *Morgan*, the trial judge refused defense counsel's request to ask the prospective jurors whether they would automatically impose the death penalty if they found the defendant guilty. *Morgan* at 721. The Supreme Court held as a matter of due process that the defendant had a right to inquire into the jurors' views on capital punishment at voir dire and that general questions by the judge about whether the jurors would follow the law and could be fair and impartial were insufficient to protect the defendant's rights. *Id.* at 733-736.

{¶ 58} We find nothing in these cases that undermines our confidence in the decision below. None of these cases stands for the proposition that group answers must be disregarded; they just make clear that, in the context of those cases, more was required to ensure an impartial jury. Indeed, we agree with Rogers up to a point. If a prospective juror makes an unequivocal declaration that he cannot afford the defendant a fair trial, we doubt that the prospective juror's mere silence in response to a judge's question like, "Is there anyone here who cannot follow the law," would be sufficient to overcome the actual bias that the prospective juror has expressed by his own words. But that is not the case that we confront today.

{¶ 59} The court of appeals did not rely solely on Juror McCarthy's response to group questions. It first concluded, after "an extensive review of the voir dire transcript," that Juror McCarthy's statements were vocalizations of the internal struggle he or anyone else would face in dealing with the difficult subject matter of the case and were "in no way indicative of an actual bias against Rogers." 2024-Ohio-1637 at ¶ 20 (12th Dist.). Only after concluding that his statements did

not show actual bias did the court add that its conclusion was supported by the "numerous occasions in which Juror McCarthy . . . agreed [as part of group answers] that he not only could, but would, [be] fair and impartial." *Id.* at ¶ 21.

{¶ 60} Further, not all the questions were directed to the entire venire. The prosecutor singled out Juror McCarthy and another prospective juror to ask whether they could fulfill their duties as jurors, sit in judgment, and do the right thing. Juror McCarthy and the other prospective juror answered affirmatively. That question, by being directed at a small group, was pointed and purposeful, like an individual question would be.

{¶ 61} In conducting voir dire, trial judges and attorneys rely on a variety of techniques to determine whether prospective jurors can be fair and impartial. These techniques include individual questions and group questions of varying types. An attorney deciding whether to challenge a prospective juror, either for cause or peremptorily, will necessarily consider all the prospective juror's responses and interactions in deciding whether to make a challenge. So too, a trial judge in deciding whether to excuse a prospective juror will necessarily consider the full context of voir dire. A reviewing court should do no less. To review whether an attorney was constitutionally ineffective for allowing the empanelment of an allegedly biased juror, a reviewing court will need to review the full record of the jury-selection process. We decline to create a blanket rule that would forbid a reviewing court from considering any aspect of the jury-selection process.

## VI. Conclusion

{¶ 62} After a full review of the voir dire transcript, we conclude that Rogers has failed to show that Juror McCarthy was actually biased against him. Therefore, Rogers has not shown that his attorney rendered ineffective assistance by failing to challenge Juror McCarthy for cause. We affirm the judgment of the Twelfth District Court of Appeals.

Judgment affirmed.

_____

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Taft Stettinius & Hollister, L.L.P., Nathan R. Coyne, and Aaron M. Herzig, for appellant.

Flowers & Grube and Louis E. Grube in support of neither party for amicus curiae, Ohio Association for Justice.

_____