[Cite as *State v. Spencer*, 2019-Ohio-2165.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-08-082 |
| | : | O P I N I O N |
| - vs - | | 6/3/2019 |
| | : | |
| DAVID L. SPENCER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR33268

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Kidd & Urling, LLC, Thomas W. Kidd, Jr., 8913 Cincinnati-Dayton Road, West Chester, Ohio 45069, for appellant

**HENDRICKSON, P.J.**

{¶ 1} Appellant, David. L. Spencer, appeals from his conviction in the Warren County Court of Common Pleas for unlawful sexual conduct with a minor. For the reasons set forth below, we affirm appellant's conviction.

{¶ 2} On July 31, 2017, appellant was indicted on one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), a felony of the third degree. The charge

arose out of allegations that on June 3, 2017, at Kings Island amusement park in Mason, Ohio, appellant digitally penetrated a 15-year-old girl, E.B., while the two were in the park's wave pool. Appellant pled not guilty to the charge and a two-day jury trial was held in June 2018.

{¶ 3} The state presented testimony from the victim, the victim's aunt, and the officer who investigated the incident. The victim's and aunt's testimony established that after E.B.'s mother's death in 2016, E.B. lived with her aunt. On Mother's Day in 2017, E.B. and her aunt went to Kings Island. While standing in line to ride a rollercoaster, E.B. and her aunt met appellant and appellant's niece. They discussed that E.B. and appellant's niece were both in school and that appellant's niece was 12 years old and E.B. was 15 years old.

{¶ 4} After riding the rollercoaster, appellant mentioned to E.B. and her aunt that he received photographs for free with his park pass. Appellant offered to send E.B. and her aunt photographs of them on the ride. E.B. and her aunt connected with appellant on Facebook so that appellant could share the photographs. After appellant sent the photographs to E.B. and her aunt, appellant began to communicate with E.B. over Facebook. E.B.'s aunt did not know about this communication.

{¶ 5} E.B. and her aunt testified that E.B. went through a difficult time after E.B.'s mother passed in 2016. E.B. stated she "started making a lot of bad decisions in [her] life and [she] kind of just lost track of where [she] was going." E.B. began cutting herself and attempted to commit suicide. She exchanged sexually explicit images and texts with her 14-year-old boyfriend, J.M. She also began sending sexually explicit images of herself to older men over the internet in exchange for money.

{¶ 6} E.B. testified that after the May 2017 Kings Island visit, she video chatted with appellant. Appellant asked her to do sexually explicit things, like put a marker in her rear end, and she complied with his requests. Appellant and E.B. made arrangements to meet at

Kings Island on June 3, 2017, around 10:00 or 11:00 a.m. E.B.'s boyfriend was also going to meet E.B. at Kings Island that day, although J.M. was not going to arrive until around 1:00 p.m. E.B. told J.M. that appellant was her uncle.

{¶ 7} E.B.'s aunt dropped E.B. off at Kings Island around 10:00 a.m. on June 3, 2017. E.B.'s aunt did not know E.B. was meeting with appellant or J.M. but, rather, believed E.B. was meeting with friends at the amusement park.

{¶ 8} Records from E.B.'s Kings Island pass indicated she entered the amusement park at 10:19 a.m. When appellant arrived, he texted her, and E.B. went to the parking lot to meet him. E.B. testified appellant was in his car, a dark blue passenger car with black sunshades on the back windows. Although E.B. was "[k]ind of scared" because it was the first time she was meeting a man she had talked with online in person, she nonetheless got into the back of appellant's vehicle with him. Once in the backseat, E.B. testified that appellant kissed her on the mouth. He also shared some cherries he had brought along with him to the park. Appellant made a comment about the cherries that E.B. understood to be a sexual reference to her virginity. He also stated, "15 will get you 15," which E.B. believed was a reference to "years in prison for [her] age."

{¶ 9} E.B. and appellant entered Kings Island together at 11:28 a.m., had their photograph taken together at the entrance, and then went on rides together. E.B. testified that during some of the rides, appellant grabbed her upper thigh and breast. After appellant and E.B. ate lunch together, J.M. arrived at the park. The three rode a few rides before going to the water park together.

{¶ 10} E.B. testified that she, appellant, and J.M. went into the wave pool. Appellant wore a life vest into the pool and E.B. wore a two-piece swimsuit. Appellant kept taking E.B. out into the deep end of the wave pool where she could not touch the bottom and where J.M. would not follow. Appellant carried E.B. "bridal style" in the pool, with her back against one

arm and her legs over his other arm. Appellant also grabbed E.B. around the waist from behind and pressed himself against E.B.'s back. E.B. testified she felt appellant's erection on her back. Appellant then "went around * * * her bathing suit bottom" with his hand and put "an inch or two of his finger" inside her vagina. E.B. testified that although she tried to distance herself from appellant after his actions, she did not call out to J.M. or tell him what had occurred. E.B. continued to spend time with appellant until she was picked up from the amusement park.

{¶ 11} While E.B. was at the amusement park on June 3, 2017, E.B.'s aunt learned that E.B. had been seeing J.M. without her knowledge and that the two juveniles had been exchanging inappropriate text messages and photographs. E.B.'s aunt confronted E.B. with this information when E.B. returned from Kings Island. E.B.'s cell phone was taken away from her as a punishment.

{¶ 12} The following day, E.B.'s aunt could tell E.B. was upset and she pressed E.B. about what was bothering her. E.B. testified she "came clean about everything" and told her aunt about what she had been doing and what had occurred at the amusement park with appellant. E.B.'s aunt testified that E.B. did not go into "much detail" about what had occurred with appellant but stated there had been inappropriate touching in appellant's car. E.B.'s aunt did not press E.B. for details but, rather, called the police to report appellant's actions and took E.B. to Cincinnati Children's Hospital to be examined. Thereafter, E.B. was forensically interviewed at the Mayerson Center.

{¶ 13} Detective Jeff Wyss with the Mason Police Department testified he investigated the allegations that appellant had engaged in unlawful sexual conduct with E.B. Wyss obtained a log of E.B.'s, appellant's, and E.B.'s aunt's Kings Island season pass holder history, which detailed when their respective passes were scanned for parking, for entrance into the park, or for a food purchase. Wyss also obtained video footage from Kings Island's

security cameras that showed appellant and E.B. entering the park together and appellant, E.B., and J.M. in the wave pool. The video from the wave pool depicted appellant carrying E.B. "bridal style" into the deeper end of the pool.

{¶ 14} From appellant's Kings Island season pass application and BMV records, Wyss learned that appellant was 35 years old at the time of the June 3, 2017 incident. On June 22, 2017, Wyss attempted to conduct an interview of appellant at a public location. The interview was recorded and the recording was played at trial. In the recording, appellant states that "if anybody did anything out of the way" with E.B., he believed it was J.M. Then, without Wyss ever mentioning the wave pool at Kings Island, appellant stated, "the water and the waves, I have no idea who it would have been because everybody is bumping into everybody in a wave pool."

{¶ 15} Following Wyss' testimony, the state rested its case-in-chief, and appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion. Appellant moved to admit, and the trial court accepted into evidence, a photograph of E.B. and J.M. kissing one another in the wave pool at Kings Island on June 3, 2017. Appellant then rested his defense without calling any witnesses.

{¶ 16} The jury found appellant guilty of unlawful sexual conduct with a minor and further found that appellant was ten or more years older than the victim at the time of the offense. Appellant was sentenced to 48 months in prison and classified as a Tier II sex offender.

{¶ 17} Appellant appealed his conviction, raising the following as his only assignment of error:

{¶ 18} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶ 19} In his sole assignment of error appellant argues that his conviction for unlawful

sexual conduct with a minor was not supported by sufficient evidence and was against the manifest weight of the evidence. Specifically, appellant contends there was not sufficient evidence presented by the state demonstrating that he knew E.B. was only 15 years of age, or that he was reckless in that regard. He also disputes that the state presented sufficient evidence that sexual conduct occurred, noting that "E.B. never saw or testified that [his] hand was under her clothing."

{¶ 20} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 21} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing

the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶ 22}** Appellant was convicted of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), which provides that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." When the offender is ten or more years older than the victim, the offense is a felony of the third degree. R.C. 2907.04(B)(3).

**{¶ 23}** Sexual conduct includes vaginal intercourse or "the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another." R.C. 2907.01(A). "Penetration, however slight, is sufficient to complete vaginal or anal intercourse." Id. "A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

**{¶ 24}** After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find that appellant's conviction for unlawful sexual conduct with a minor was supported by sufficient evidence and was not against the manifest weight of the evidence. The state presented testimony and evidence from which the jury could have found all the essential elements of the offense proven beyond a reasonable doubt. Appellant's argument that there was insufficient evidence that sexual conduct occurred because E.B.

never saw or testified that appellant's hand was under her clothing is without merit. The state did not need to prove that E.B. or anyone else saw appellant's movements to establish that the penetration occurred. E.B. testified appellant was standing behind her in the pool when he put "an inch or two of his finger" inside her vagina after he "went around * * * her bathing suit bottom" with his hand. E.B.'s testimony was sufficient to establish that sexual conduct occurred. *See, e.g., State v. B.J.T.*, 12th Dist. Warren No. CA2016-12-106, 2017-Ohio-8797, ¶ 28 (noting that the victim's testimony "is sufficient, on its own, to establish the element of penetration").

{¶ 25} Furthermore, through E.B.'s and E.B.'s aunt's testimony, the state also presented sufficient evidence that appellant knew E.B. was only 15 years old, or was reckless in regard to her young age. E.B. and her aunt testified that on Mother's Day in 2017, while they were waiting in line with appellant and appellant's niece, the topic of her age came up. Appellant was present when E.B. and appellant's niece discussed school and shared their ages.

{¶ 26} The fact that appellant knew E.B.'s age is further supported by E.B.'s testimony that appellant made reference to her age when they met on June 3, 2017. While kissing E.B. in the backseat of his car, appellant stated "15 will get you 15," referencing the prison term he could receive as a result of E.B.'s age. Based on this evidence, the jury was free to find that appellant knew E.B. was less than 16 years of age, or was reckless in that regard.

{¶ 27} Appellant argues E.B. was not a credible witness as cross-examination of E.B. demonstrated she only informed her aunt of appellant's misconduct after she got in trouble for sharing sexually explicit text messages and photographs with her boyfriend, she had lied to her aunt about who she was meeting at Kings Island on June 3, 2017, and she had mixed up "significant aspects of her testimony, such as when she ate lunch and when she was in the wave pool." We find no merit to appellant's arguments. The jury had the opportunity to

observe E.B. on the stand and to view her testimony in light of the surveillance footage of the wave pool and appellant's unprompted statement to Detective Wyss that if something had happened to E.B. in the wave pool, he had "no idea who it would have been because everybody is bumping into everybody in the wave pool." The jury, as the trier of fact, was "free to believe all, part, or none of the testimony of each witness who appear[ed] before it," and the jury clearly found E.B.'s testimony credible. *State v. Woodard*, 12th Dist. Warren No. CA2016-09-084, 2017-Ohio-6941, ¶ 24.

**{¶ 28}** Accordingly, given the evidence presented at trial, we find that the jury did not lose its way and create such a manifest miscarriage of justice such that appellant's conviction for unlawful sexual conduct with a minor must be reversed and a new trial ordered. Appellant's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Appellant's sole assignment of error is, therefore, overruled.

**{¶ 29}** Judgment affirmed.

RINGLAND and PIPER, JJ., concur.